NICOLÁS BETANCOURT, demandante y apelante, *v.* ASOCIACIÓN FONDO DE AHORRO Y PRÉSTAMO DE LOS EMPLEADOS DEL GOBIERNO INSULAR DE PUERTO RICO, demandada y apelada.

Núm. 7804.—*Sometido:* Febrero 1, 1939. *Resuelto:* Junio 9, 1939.

*Virgilio Brunet,* abogado del apelante; *Carlos H. Juliá,* abogado de la apelada.

EL JUEZ PRESIDENTE SEÑOR DEL TORO emitió la opinión del tribunal.

Nicolás Betancourt demandó a la Asociación Fondo de Ahorro y Préstamo de los Empleados del Gobierno Insular en reclamación de mil ochocientos dólares de seguro por incapacidad permanente.

Alegó que siendo empleado telegrafista del Gobierno Insular, el 7 de junio de 1933 se acogió a la ley creadora de la Asociación demandada, figurando en la segunda categoría del seguro; que en 13 de agosto siguiente sufrió una hemorragia cerebral con hemiplejía del lado derecho; que en 30 de septiembre siguiente solicitó de la Asociación la concesión del beneficio que la ley provee para sus asociados físicamente imposibilitados de trabajar por incapacidad total y permanente; que fué examinado por los doctores Francisco J. Mejías en septiembre 30, 1933, M. Morales en junio 21, 1934, Miguel Veve en julio 29, 1935 y José Garrido en febrero 25, 1936, y todos dichos facultativos certificaron que se encontraba total y permanentemente incapacitado para el trabajo; que la demandada se ha negado a pagarle el seguro que le corresponde ascendente a mil ochocientos dólares.

La demandada contestó. Admitió algunos hechos y negó que el demandante estuviera físicamente incapacitado para trabajar. Como defensas especiales alegó que el demandante estuvo cotizando sus cuotas para ahorro y seguro hasta diciembre 16, 1933 en que se le dió licencia sin sueldo por tiempo indefinido; que al cesar como empleado tenía en el Fondo de Ahorro $10.36, y de un préstamo que había contratado con la Asociación por $39, debía $31.20; que solicitado que hubo en septiembre 22, 1933, su seguro por incapacidad física permanente, el médico de la Asociación Dr. E. García Cabrera, lo hospitalizó para proceder a ciertos exámenes necesarios, procediendo el Dr. Bernabe a examinarle la vista, llegando ambos facultativos a la conclusión de que el demandante no estaba ni estuvo total y permanentemente incapacitado para desempeñar las funciones de su cargo; que más tarde el demandante ingresó en la Escuela de Medicina Tropical donde el Dr. J. A. Pons que lo examinó y asistió llegó a la misma conclusión que el Dr. García Cabrera; que el demandante dejó de cotizar las cuotas por seguro y ahorro desde que tomó licencia sin·

sueldo por más de tres meses sin que anunciara su deseo de continuar el seguro, habiendo, por tanto, perdido sus derechos al mismo, pudiendo sólo pedir que se le liquidara el Fondo de Ahorro y la mitad de las cuotas de defunción que hubiere pagado, liquidación que no hubiera tenido resultados favorables pues sólo tenía en el Fondo $10.36 y adeudaba por concepto de préstamo $31.20.

Fué el pleito a juicio y la corte de distrito lo falló en contra del demandante expresando que lo hacía por la única razón de no haberse seguido para la reclamación el procedimiento adecuado que lo es según su opinión el de *mandamus*.

No conforme el demandante, apeló. Señala dos errores, uno como cometido al declararse sin lugar la demanda y otro al imponerle las costas.

A los efectos de enfocar debidamente el estudio y resolución del asunto, se hace necesario transcribir de la relación del caso y opinión del juez sentenciador lo que sigue:

"Se trata de una acción ordinaria en contra de la institución pública llamada Asociación Fondo de Ahorro y Préstamo de los Empleados del Gobierno Insular de Puerto Rico, creada por la Ley Núm. 52 de 11 de julio de 1921,.... La Sección 20, según fué enmendada por la Ley Núm. 15 de abril 21 de 1927, dispone lo siguiente:

" 'A partir de la fecha en que entra en vigor esta Ley, siempre que ocurra el fallecimiento de uno de los miembros de la Asociación, acogidos a sus beneficios, o que se inutilice permanentemente para desempeñar sus funciones oficiales, por virtud de accidente o enfermedad, tendrá derecho a un seguro en la forma siguiente: el seguro se dividirá en dos categorías que se denominarán Primera y Segunda Clase: pertenecen a la Primera Clase los que expresen su voluntad de satisfacer una cuota mensual de un (1) dólar por cada defunción o inutilidad y a la segunda los que paguen una cuota de cincuenta (50) centavos por dichos conceptos. El Presidente de la Asociación, "Fondo de Ahorro y Préstamo de los Empleados del Gobierno Insular de Puerto Rico", notificará a los jefes de oficinas o departamentos del Gobierno Insular, a que se refiere la Sección 2 de la ley la defunción o inutilidad, y dichos jefes de departamentos u oficinas ordenarán que al hacerse las próximas nóminas, sean descontados del

sueldo de todos y cada uno de los empleados de sus respectivos departamentos y oficinas que no hayan renunciado a los beneficios de esta Ley la suma de un (1) dólar a cada asociado de la primera categoría y de cincuenta (50) centavos a los de segunda categoría cuando ocurra la defunción o inutilidad de un empleado comprendido en la primera categoría y cuando ocurra la defunción o inutilidad de un empleado de los comprendidos en la segunda categoría, se le descontará cincuenta (50) centavos tanto a los de primera como a los de segunda; *Disponiéndose*, que nunca serán descontadas a los empleados comprendidos en esta Ley, más de cuatro cuotas en un solo mes.

" 'En caso de que ocurran más de tres defunciones o casos de inutilidad en un solo mes, se pagarán éstas en los meses subsiguientes por el orden en que hayan ocurrido los fallecimientos o inutilidad.

" 'El Auditor de Puerto Rico librará un cheque por la suma descontada de acuerdo con esta sección, a favor del Presidente de la Asociación, "Fondo de Ahorro y Préstamo de los Empleados del Gobierno Insular de Puerto Rico", quien descontará cinco (5) por ciento de la cantidad total, cuya suma ingresará en el Fondo de Reserva de dicha Institución y la diferencia, previo acuerdo de la Junta de Directores, la entregará a los causahabientes legales del empleado fenecido; *Disponiéndose, además,* que la Junta de Directores queda por la presente facultada para crear un Fondo de Reserva que se denominará "Fondo de Reserva para Anticipos", el cual se usará para conceder préstamos a los socios inutilizados y a los beneficiarios de los socios y de los acogidos que fallecieren, cuando éstos tuvieren que hacer turnos por un período mayor de dos meses para cobrar el importe del seguro correspondiente. Este "fondo" se creará con el importe del veinte (20) por ciento del ingreso total de cada mes por el concepto del tres (3) por ciento de deducciones del sueldo de cada asociado comprendido en la sección 2 de esta Ley. Los préstamos que en calidad de anticipo se concedieren de este fondo, serán concedidos por un período no mayor de la fecha en que corresponda al asociado o sus causahabientes percibir el importe total del seguro y su cuantía no excederá de un 60 por ciento de la cantidad que por concepto del seguro habrá de corresponderle y a juicio y discreción de la Junta de Directores. Estos anticipos se harán previa solicitud escrita de la parte interesada y cuando fueren dos o más personas las que tuvieren interés en el seguro, por ser beneficiarios, la junta podrá conceder el anticipo a todos mancomunada o separadamente, atendiendo en este último

caso a la parte alíquota que a cada cual corresponda en la "Declaración de Beneficiarios" requerida en la sección 3 de esta Ley. En caso de que la referida "Declaración de Beneficiarios" no hubiere sido hecha, no se considerará solicitud por anticipo hasta que se hubiere hecho la declaratoria de herederos correspondiente y ésta se encuentre en poder de la Junta de Directores de la Asociación. Por todo anticipo hecho en esta forma se descontará el seis (6) por ciento de interés anual sobre la cantidad anticipada y el importe de dicho anticipo será descontado al tiempo de ser liquidado el seguro correspondiente, del importe total del seguro y acreditado al "Fondo de Reserva para Anticipos" que se crea en esta sección. Cuando este "fondo" excediere de la cantidad que la Junta de Directores creyere suficiente para afrontar cómodamente dichos anticipos, la Junta de Directores podrá suspender la acumulación de fondos en el expresado "Fondo de Reserva para Anticipos".'

"Esta sección establece el procedimiento a seguir cuando un empleado acogido a los beneficios de la ley se inutiliza permanentemente. Es su deber comunicarlo al Presidente de la Asociación, siendo obligación de este último comunicar el hecho a los distintos Jefes de Departamentos, para que éstos en las próximas nóminas descuenten cincuenta centavos a cada empleado, librando entonces el Auditor de Puerto Rico un cheque a favor del Presidente de la Asociación por la suma total descontada, y entonces, este último descontará el 5 por ciento del total del cheque que ingresará en un Fondo de Reserva de dicha Institución, y la diferencia, previo acuerdo de la Junta de Directores, se entregará al asegurado, o a sus causahabientes en caso del fallecimiento. Se ve clara la intención de la Legislatura de que el seguro se pague en la forma prevista en dicho artículo 20. En ninguna parte se le impone obligación alguna a la demandada como institución pública. La obligación es del Presidente. El procedimiento a seguir es un *mandamus* contra este funcionario público para hacerle cumplir sus deberes ministeriales según se hizo en los casos de *Muñoz* v. *Ramos,* 39 D.P.R. 405, *Feliciano* v. *López,* 44 D.P.R. 937 y *Feliciano* v. *López,* 48 D.P.R. 530. . . .

"No hemos perdido de vista los casos que sostienen que procede una acción ordinaria contra Asociaciones de Seguro mutuo y benéfico (*Mutual Benefit Insurance Associations*), por el cobro de la cantidad total del seguro aún cuando en el contrato entre la Asociación y el asegurado se establecía que el seguro había de pagarse a virtud de cuotas pagadas por los miembros de la Asociación. En todos estos casos se trataba de Asociaciones privadas incorporadas y las cortes

se fundaban en que de acuerdo con la intención de las partes contratantes la compañía se obligaba incondicionalmente a pagar el seguro y que si los miembros no satisfacían sus cuotas éste era un riesgo que asumía el asegurador. En este caso el único contrato es la ley y ella, repetimos, solamente impone al Presidente de la Asociación la obligación de notificar a los distintos Jefes de Departamento el hecho de la inutilidad física del empleado. La intención de la ley es clara en el sentido de no obligar a la Asociación a pagar de sus fondos generales, sino pagar exclusivamente de las cuotas que se le descuenta a cada empleado en las nóminas. . . . .

". . . . . El procedimiento a seguir es compeler al Presidente de la Asociación que cumpla su deber ministerial. (*Muñoz* v. *Ramos,* supra.) No procede, en un pleito de esta índole, dictar una sentencia condenando a la demandada a pagar de sus fondos generales el importe del seguro reclamado.

"No deseamos terminar esta opinión sin manifestar que durante la vista quedó plenamente demostrado el derecho del demandante al seguro que solicita. Los reputados médicos que testificaron, el de la Asociación inclusive, expresaron terminantemente que cuando el demandante solicitó el seguro estaba total y permanentemente incapacitado y en estas circunstancias no nos explicamos cómo cinco años más tarde todavía se discute su derecho. Tanto el Presidente de la Asociación como sus directores al actuar como tales están ejercitando funciones públicas y gubernamentales y no deben en forma alguna frustrar los fines benéficos de la ley. Por la única razón de no haberse utilizado el procedimiento adecuado es que se declara sin lugar esta demanda."

La cuestión del procedimiento a seguir en casos de esta naturaleza fué estudiada y resuelta por esta corte en *Escartín* v. *Comisión Policía Insular,* 47 D.P.R. 502. No hay duda alguna que el criterio rígido sostenido por el juez sentenciador encuentra apoyo en' la jurisprudencia, pero esta corte pesando las razones aducidas en pro y en contra se decidió por adoptar como adoptó una regla que sin violentar derecho alguno de las partes, permite decidir sobre los méritos del caso, lo mismo que en el recurso de *mandamus,* dentro de los amplios trámites del juicio ordinario. Nuestro criterio quedó finalmente expuesto como sigue:

"Después de una cuidadosa consideración del asunto, creemos que debe revocarse la sentencia recurrida. Nos parece justo el criterio de la Corte de Apelaciones de Nueva Jersey. El *mandamus* es un recurso privilegiado. Pudo ejercitarlo la parte demandante y hubiera obtenido una más rápida y directa decisión de su caso. No lo hizo. Prefirió acogerse a la acción ordinaria más amplia y dilatada, pero ello no debe ser obstáculo para que la cuestión sea resuelta por la corte de acuerdo con sus méritos. Todo cuanto en contrario se diga en el caso de Ortiz, supra, debe entenderse derogado."

Y no se nos ha convencido en el sentido de que debamos variar de criterio. Claro es que no procede dictar sentencia condenando a la demandada a pagar el seguro reclamado, pero sí puede la corte basándose en los hechos alegados que estimó ciertos dictar la sentencia que ellos mismos demandan, o sea más o menos la misma que se hubiera dictado en un procedimiento de *mandamus,* a saber, condenando a la demandada a reconocer el derecho del demandante al seguro, debiendo su Presidente hacer la notificación de ley a fin de que ésta quede debidamente cumplida hasta la entrega al demandante de las sumas que por seguro le corresponde recibir.

*Debe declararse el recurso con lugar, revocarse la sentencia apelada y dictarse otra en la forma que dejamos expuesta.*